## Commercial Acceptance Corporation v. Uber et al.

*Ralph S. Croskey*, for plaintiff; *Edward W. Kirby*, for defendants.

MARTIN, P. J., June 21, 1928.—Judgment was entered on a lease of a second-hand truck which was purchased by plaintiff from the Motor Service Company and rented by plaintiff to defendants by a bailment lease for a period of 125 weeks at a total rental of $1863.40, "due in advance," but the lease provided that the rent "for the convenience of bailee, may . . . be paid as follows: $15 a week for each and every week, commencing on March 10, 1923, until full payment;" and "should bailee fail to pay any of the rental payments at the time and place specified," the lease stipulated that "the entire balance on this truck, less all rental payments already made by bailee, shall be due and payable forthwith, at the election of the bailor." The bailee agreed to make the rental payments regardless of whatever loss or damage may happen to said motor-vehicle; and if the bailee failed to comply with any of the conditions of the lease, or made default, the entire unpaid hire forthwith became due and payable, without notice or demand, and the prothonotary was authorized to appear for and confess judgment against the bailee, in favor of bailor, for the amount of hire unpaid and costs, with an attorney's commission of 20 per cent. No repairs could be made to the truck without the written consent of the bailor first had and obtained; and it was agreed that the lease contained all of the terms of the contract entered into between the parties, that nothing had been omitted therefrom, that there was no parol contemporaneous agreements between the parties, and that no special or collateral agreement of any sort or kind should bind either party unless written upon the face of the contract.

There was a statement in the lease signed by defendants:

"I acknowledge delivery of the car to me. I have read the foregoing agreement before signing and understand all the terms and conditions thereof, which have been fully explained to me. I understand that no agent is authorized to make any verbal terms differing from the above contract, and I have received a copy of said agreement. This automobile has been examined thoroughly by me and I am satisfied with its present condition in every detail. I acknowledge that neither the said automobile or any of its attachments or accessories have been warranted to me in any manner whatsoever."

The lease was dated March 1, 1923. The judgment was entered on April 22, 1923. No instalment of rent had been paid by defendants, and plaintiff claimed $1863.40, the full amount of the rent that would have become due at the end of the term. An attorney's commission of 20 per cent., amounting to

$373.68, was added, making the total assessment of damages $2236.08. Execution was issued on real estate belonging to the defendant, Uber.

Defendants filed a petition, averring that the defendant, Uber, was advised by the duly authorized agent or representative of the plaintiff that it was unnecessary for him to sign certain papers as reference for the other defendant, Barry, and that he executed the papers induced by, and relying upon, that statement, which was false; that he is a blacksmith and had no negotiations or transactions with plaintiff or any representative of plaintiff for the purchase or lease of a motor-vehicle of any kind, and never received any motor-vehicle from plaintiff; that the execution of the lease by him was brought about by the false representations and statements made by, and on behalf of, plaintiff, by its duly authorized representative, that the motor-vehicle, the subject of the transaction, was a Republic truck in good running and operating condition; that this statement was false, untrue and fraudulent, and the entire transaction and execution of papers and documents were procured and induced by said representations; that the motor-vehicle was not an automobile, and would not operate and run under its own power; that, immediately upon being attempted to be driven from the garage by Edward J. Barry, or under his direction, it broke down and could not be operated; that immediately upon a load being placed upon the truck it broke down; that Barry from time to time informed plaintiff of the defective condition of the vehicle and endeavored to have it returned, but plaintiff failed and refused to take any action in the matter until the entry of the judgment.

A rule was granted to show cause why the judgment should not be opened and defendants let into a defense and the execution stayed.

Plaintiff filed an answer which denied that the execution of the lease was induced or brought about by false and fraudulent statements and representations, and averred that it was signed by defendants of their own free will and volition. It was denied that plaintiff represented it was necessary for defendant Charles Uber to sign certain papers as a reference for Barry, and averred that no such representation was made. It was further denied in the answer that the motor-vehicle was not an automobile or that it would not operate or run under its own power and that immediately upon the attempt to drive it from the garage by Barry it broke down and could not be operated; but, on the contrary, the answer averred that the automobile was in perfect mechanical condition and good running order and there were no mechanical or other defects in it of any kind or nature whatsoever; and that defendants signed a statement that the automobile had been examined thoroughly and they were satisfied with its present condition in every detail, and that neither the automobile nor any of its attachments or accessories were warranted.

Depositions were taken. A letter sent to the plaintiff by the defendant, Barry, was placed in evidence by plaintiff, which stated:

"I regret in not being able to meet payments on truck as I have been laid up with a bad attack of rheumatism and I only went to work Wednesday so that throws me back now. When I first got that truck I got jobs for it, but the truck fell down and I had to get another truck to haul it for me, and when it broke down it was very cold and that's when I was taken sick. Now I to tell you that no one will hire that truck in the condition it is and the only than can be done is to replace a radiator, replace a water jacket, overhaul the transmission and clutch and also a new magneto disk, in fact I would have to overhaul the whole machine and I am in no position to do same now. If you can replace those parts you can add it on the bill, then I will work the truck steady and pay for it; so now it is up to you as I can't do anything

with it as it won't haul a load, so if can't help me that way, then I can't keep it any longer as I don't want a big bill, and if will take it back I will pay whatever is due on it now. The truck is at Deanley Ave. Roxborough. Hoping I will hear from you,

"E. J. BARRY
c/o John Barry,
120 N. 21st."

There was a long delay in completing the depositions by reason of the inability of the defendant, Uber, to secure the attendance of his co-defendant, Barry, for the purpose of being examined as a witness. Barry's deposition was not taken.

On May 16, 1927, the rule to show cause why the judgment should not be opened was discharged for want of prosecution.

On June 21, 1927, a petition was presented by the defendant, Uber, averring that the depositions had not been completed owing to the fact that the testimony of the defendant, Edward J. Barry, could not be obtained, as he could not be located and his attendance secured, but that Barry was now available and his testimony could be taken. A rule was granted to show cause why the order discharging the rule to open the judgment should not be vacated, the rule to open judgment be reinstated, and an order issued to stay proceedings. This rule was made absolute.

On Jan. 31, 1928, a petition was presented by plaintiff, averring that no depositions had been taken since the rule to reinstate the rule to open judgment was made absolute, and that the status was the same as when defendants' rule to open judgment was discharged for want of prosecution. A rule was granted to show cause why execution should not issue upon the judgment.

Charles Uber, one of the defendants, filed an answer to this petition, in which he averred that he had made diligent efforts to locate and secure the attendance of Edward J. Barry, but admitted that Barry had not been found and that no further depositions had been taken.

The defense is presented by the defendant, Uber, who testified that he had no interest in the leasing of the truck.

It appeared in the depositions that the price charged defendants for the truck, in the form of rent, was nearly double that which plaintiff paid for the truck, and that plaintiff knew that Barry was leasing the truck for the purpose of conducting a hauling business. It was of vital importance to him that the truck should be capable of carrying a load and was in running order. Although Barry did not appear as a witness, plaintiff placed his letter in evidence, which stated that the truck broke down and could not carry a load.

The lease calls for one "Republic truck automobile, model 3½ ton;" and, notwithstanding the clause in the lease that there was no warranty, the case is governed by the law declared in Berwick Store Co. v. Zadyejka, 76 Pa. Superior Ct. 461, 463, in which "the question of fact submitted to the jury was whether the truck delivered met the requirements of the contract." It was said by Henderson, J.: "The appellant contends that the term 'two ton Reo truck' is descriptive merely of the thing leased and could not be regarded as support for the theory of an implied warranty. There must be, however, some significance in the use of the words 'two ton.' If that is not descriptive of the weight of the machine, it must relate to its carrying capacity, and that it was intended to designate the latter quality we have no doubt. . . . The lease calling, therefore, for a truck having a capacity to carry two tons under ordinary conditions, a failure by the plaintiff to deliver such a truck would

amount to a breach of the contract, and the defendants might assert a failure of consideration for their notes. Whether they brought an action for a breach of contract or defended against the payment of the balance of the rent, the questions of law involved were the same. It is an elementary principle that the plaintiff cannot recover under such circumstances if it made default in keeping its pledge. The defendants are not denying the execution of the notes. They are asserting that having given them in good faith in reliance on the plaintiff's contract, they afterward learned that the thing they intended to lease, and which the plaintiff undertook to deliver to them, was not that which they actually received, to wit, a Reo truck having the power and in the condition to carry two tons of freight. . . . From the day the truck was delivered, it was in a defective condition and continued so to be; . . . it lacked power to move loads of less than two tons, and a question for the jury was therefore presented."

There was no testimony to contradict the statements of Barry contained in the letter sent by him to plaintiff and which the plaintiff placed in evidence, and no effort was made by plaintiff to repair the truck.

In Callahan v. Gorson, 65 Pa. Superior Ct. 329, there was a provision in a lease that "This car is positively not guaranteed by this Company. This agreement constitutes the entire contract between both parties." It was said by the court (page 333): "If the contract was for the sale of a specific kind of car and of a defined quality to be used for a particular purpose as alleged, then there was a warranty and such contract may be enforced."

In Hoffman v. Auto Co., 75 Pa. Superior Ct. 524, 527, it was said: "There was a total failure of consideration when the truck proved to be useless for the purpose for which it was purchased." The court also used language applicable to the present case, saying: "We, however, think the plaintiffs show a sufficient state of facts to warrant the matter to be submitted to a jury. . . . The case resembles that of Land v. Automobile Finance Co., 73 Pa. Superior Ct. 116, in which our Brother Head said: 'All of the circumstances surrounding this transaction seem to invite an investigation of it by a court and jury if the object of a trial be to endeavor to do justice between the parties.' "

And now, to wit, June 21, 1928, the rule to show cause why execution should not issue is discharged; and the reinstated rule to show cause why the judgment should not be opened is made absolute.